UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHY KELLY, as mother and next friend for DEREK KELLY, a minor, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) 06 C 1512 |
| BOARD OF EDUCATION OF MCHENRY COMMUNITY HIGH SCHOOL DISTRICT 156 and individual members of the Board of Education, MARY KAY LOSCH, LORI NELSON, DEBORAH JACOBS, THOMAS WAGNER, DAVID BOGER, DIANE VIDA, and BOB GLASCOTT, JR., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

The following matter comes before the court on Defendants', Board of Education of McHenry Community High School District 156 and the individual members of the Board of Education, Mary Kay Losch, Lori Nelson, Deborah Jacobs, Thomas Wagner, David Boger, Diane Vida, and Bob Glascott, Jr., (collectively referred to as "the Board"), Motion to Dismiss Plaintiff, Kathy Kelly's ("Kelly"), Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth in the opinion below, Defendants' Motion is granted.

## BACKGROUND

The relevant facts are gleaned from the allegations set forth in Plaintiff's Amended Complaint, which, for present purposes, we are obligated to accept as true. Kathy Kelly is the mother of Derek Kelly ("Derek") who was a student at McHenry Community High School until he was expelled by the Board on January 18, 2006. Prior to his expulsion, Derek had attended McHenry for three years but had only attained first year status because he had not received enough credits to progress.

McHenry has a school policy prohibiting the promotion of gang related material. Section 8.21 the Student Discipline Code ("the Code") provides for "Prohibited Student Conduct," whereby:

> "gross disobedience or misconduct includes...27. Gang Activity: A 'gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more criminal acts or acts in violation of school rules, which has an identifiable name or identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity or activity relating to the violation of school rules. Gang activity includes, but is not limited to, any act in furtherance of the gang and possession or use of gang symbols, such as drawings, hand signs and attire."

The Code also provides that: "[t]he visibility of gangs and gang related activities in the school setting, by their very nature, cause a substantial disruption of school and school related activities." Derek has allegedly violated Section 8.21 on three separate occasions. Derek's first offense occurred in November 2003 when he drew a "T" in

the shape of a pitchfork on an assignment, and his second offense occurred on February 25, 2004 when he drew a crown on a piece of artwork. Derek was instructed on the Code and warned of its implications following each of the violations.

On January 4, 2006, a teacher at McHenry confiscated Derek's student handbook while he was serving an in school suspension and attempting to pass it to another student. The teacher noticed that Derek had drawn a number of five pointed crowns throughout the handbook. On January 6, 2006, Kelly was forwarded a notice from Phillip A. Hintz, the Superintendent of McHenry, notifying her of the charges against Derek, the proposed expulsion, the date of the expulsion hearing, and right to counsel.

On January 12, 2006, a hearing was conducted in front of Dana Fattore Crumley ("Crumley"), a Board appointed hearing officer and attorney from the law firm of Franczak Sullivan P.C. which represents McHenry. Evidence was presented and heard at the hearing regarding the matter from the McHenry administration, Kelly and Derek. Crumley specifically heard testimony from Jill Harris ("Harris"), a resource officer assigned to McHenry from the McHenry Police Department. Harris testified that "the inverted pitchfork, which was the first symbol drawn by Derek, is a sign of disrespect to a gang known as the Gangster Disciples, or to other gangs affiliated with them" and that the "three point and five point crowns, found in Derek's agenda, are a sign of affiliation with the Latin Kings." Harris went on to explain that, "drawing gang

symbols and gang graffiti can be very dangerous, even if a person is not in a gang because a person in another gang could misconstrue it as a sign of disrespect." The hearing was recorded but not transcribed, and the tape was subsequently destroyed. Crumley compiled a hearing report and forwarded it to the Board. After considering the report, the Board decided to expel Derek through the end of the 2005-2006 school year. On January 18, 2006, Plaintiff received notice of the Board's decision.

On February 21, 2006, Kelly initiated this suit on behalf of Derek against the Defendants by filing a Complaint in Illinois state court, and on March 17, 2006, the case was removed to this court. On March 22, 2006, Plaintiff filed amended counts III and V-VIII alleging: (III) that the Board violated Derek's first amendment freedom of speech; (V) that Section 8.21 of the Code is void for vagueness and overbroad; (VI) the Board violated Derek's substantive due process rights; (VII) the Board violated Derek's procedural due process rights; and (VIII) spoliation of evidence by the Board. On June 14, 2006, the Board filed the instant Motion to Dismiss the amended counts.

## LEGAL STANDARDS

When considering a 12(b)(6) motion to dismiss, a court evaluates the legal sufficiency of a plaintiff's complaint, not the merits. Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). We must accept all well-pleaded allegations as true and will not dismiss a case for failure to state a claim unless the plaintiff cannot prove any

facts sufficient to support his claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All inferences are to be drawn in a light most favorable to the plaintiff. Jackson v. E.J. Branch Corp., 176 F.3d 971, 978 (7th Cir. 1999). To survive a motion to dismiss, a plaintiff need only provide a "short and plain statement" under Rule 8(a)(2); the particulars of the claim are not required. Midwest Gas Servs. v. Ind. Gas. Co., 317 F.3d 703, 710 (7th Cir. 2002). Nonetheless, to withstand a motion to dismiss, a complaint must allege facts which set forth the essential elements of the cause of action. Doherty v. City of Chi., 75 F.3d 318, 326 (7th Cir. 1996). With these principles in mind, we turn to the instant motion.

## DISCUSSION

Plaintiff's claims fall into two categories: 1) Section 1983 claims and 2) an Illinois state law spoliation claim. Because all of the Section 1983 claims are governed by the same standard of review we will deal with them first. Subsequently, we will turn our attention to Plaintiff's spoliation claim.

### A. Plaintiff's Section 1983 Claims

Kelly fails to indicate whether her Section 1983 claims are brought against the Board of Education in its official capacity or members of the Board of Education in their individual capacities. The First and Fourteenth Amendments to the Constitution do not provide individuals with an independent cause of action against local

governments. Rather, the appropriate vehicle for bringing such claims against local officials and municipalities is Section 1983. Eklund v. Hardiman, 526 F.Supp. 941, 942-943 (N.D.Ill. 1981). To state a claim under Section 1983 against a municipality, a plaintiff must set forth two essential elements: 1) deprivation of a constitutionally protected right; and 2) that the deprivation was caused by a municipal policy or custom or by a government officer who was directly responsible for the improper conduct, and knowingly, willfully, or recklessly caused the alleged deprivation. Franklin v. City of Evanston, 384 F.3d 838, 843 (7th Cir. 2004)(relying on Monell v. N.Y. City Dept. of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018 (1978). In contrast, to prove individual liability under Section 1983, a plaintiff must establish that the individuals acted with deliberate or reckless disregard of plaintiff's constitutional rights or that the conduct that caused the constitutional deprivation occurred at the direction of or with the individuals knowledge or consent. Myles v. City of Indianapolis, 213 F.Supp.2d 962, 967 (S.D.Ind. 2002).

*1. Count III - First Amendment Freedom of Speech*

The First Amendment protects freedom of speech and expressive conduct, and generally prevents the government from prohibiting such activities. R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 382, 112 S.Ct. 2538, 2542 (1992). However, First Amendment protections are not absolute. Virginia v. Black, 538 U.S. 343, 358, 123

S.Ct. 1536 (2003). "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Sch. Dist., 393 U.S. 503, 506, 514, 89 S.Ct. 733 (1969). Further, the Supreme Court has found that schools cannot punish students for expressing their personal views at school "unless school authorities have reason to believe that such expression will 'substantially interfere with the work of the school or impinge upon the rights of other students.'" Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266, 108 S.Ct. 562, 567 (1988) (quoting Tinker, 393 U.S. at 506, 89 S.Ct. 733). However, a school need not tolerate student speech that is inconsistent with the school's basic educational mission even though the First Amendment would protect similar speech or expressive conduct outside of the school setting. Kuhlmeier, 484 U.S. at 266, 108 S.Ct. 562.

In order to claim the protection of the First Amendment, a plaintiff must demonstrate that: 1) his conduct was intended to convey a particularized message; and 2) the likelihood is great that the message would be understood by those who viewed it. Oleson v. Bd. of Educ. of Sch. Dist. No. 228, 676 F.Supp. 820, 822 (N.D.Ill. 1987). A school rule regulating the expression of a student's individuality is presumed to be valid unless that plaintiff can show the absence of a rational connection between the

regulation and the accomplishment of a public purpose. A rational connection exists between a regulation and the accomplishment of a public purpose if the regulation is aimed at curtailing the proliferation of gang symbols. Id at 823.

Although Plaintiff contends that the drawings constitute artistic expression, nowhere in the Amended Complaint or her subsequent submission does Plaintiff inform the court of what particularized message Derek was attempting to convey with his drawings. Consequently, Plaintiff's First Amendment claim is fundamentally flawed. Further, even if Derek's drawings were meant to convey a particularized message, the amended complaint is silent as to any such message that would be conveyed to those who viewed it. Therefore, Plaintiff has failed to adequately state a First Amendment claim.

## 2. Count V - Vagueness and Overbreadth

A rule, regulation, or law can be facially unconstitutional under two different theories. First, laws that inhibit the exercise of First Amendment rights can be invalidated under the overbreadth doctrine. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908 (1973). Second, even if a law does not reach a substantial amount of constitutionally protected conduct, it can be found to be impermissibly vague if it fails to define the offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in

a nonarbitrary, nondiscriminatory manner. Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855 (1983).

### *1. Overbreadth*

"The overbreadth doctrine allows a plaintiff to ask that a law be struck down based not on how it affects the plaintiff but on how it might be applied to third parties not before the court." Anderson v. Milwaukee County, 433 F.3d 975, 979 (7th Cir. 2006); see also Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908 (1973). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society-to prevent the statute from chilling the First Amendment rights of other parties not before the court." Secretary of State of Maryland. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 958, 104 S.Ct. 2839, 2847 (1984). Because of the overbreadth doctrine's far-reaching effects, courts must apply it "with hesitation" and "only as a last resort." Los Angeles Police Dep't v. United Reporting Publ'g Corp., 528 U.S. 32, 39, 120 S.Ct. 483 (1999) (citation omitted). The Seventh Circuit has said that, "[c]ommon sense must not be and should not be suspended when judging the constitutionality of a rule or statute." See Anderson v. Milwaukee County, 433 F.3d at 978. Further, it has been held that speech in nonpublic forums, such as elementary schools, is subject to significantly greater regulation that

need only be reasonable. See Muller, 98 F.3d at 1537; Anderson v. Milwaukee County, 433 F.3d at 980.

Plaintiff argues that Section 8.21 fails to define what a "gang symbol" is and, therefore, sweeps within its parameters a great deal of constitutionally protected speech. However, under a common sense interpretation of Section 8.21, it is evident that it is specifically directed at student conduct showing gang affiliation which disrupts the school's educational process. Section 8.21 specifically prohibits "possession or use of gang symbols, such as drawings, hand signs and attire" thereby providing McHenry students with specific examples of the prohibited conduct. In addition, it is undisputed that gang symbols are, in and of themselves, considered dangerous. Therefore, this is clearly not a situation where the overbreadth doctrine must be applied as a means of "last resort" and, consequently, Kelly's claim that Section 8.21 is overbroad is dismissed.

### *2. Void for Vagueness*

"A law is void for vagueness if it fails to give fair warning of what is prohibited, if it fails to provide explicit standards for the persons responsible for enforcement and thus creates a risk of discriminatory enforcement, and if its lack of clarity chills lawful behavior." Anderson v. Milwaukee County, 433 F.3d at 978 (citing Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294 (1972)). For a plaintiff to succeed on a

vagueness claim, she must demonstrate that the rule is impermissibly vague in all of its applications. Fuller, 251 F.3d at 667 (citation and quotation omitted). In the context of school disciplinary codes, the Supreme Court has said, "Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." Fraser, 478 U.S. at 686, 106 S.Ct. 3159.

After reviewing Kelly's submissions, it is clear that she fails to show that Section 8.21 is unconstitutional in all of its applications and, for that reason alone, her vagueness claim fails. Furthermore, even if Kelly were to have alleged that Section 8.21 were vague as to any third party, she fails to show how it was vague as applied to Derek who was warned about his drawings in both November of 2003 and February of 2004. It is also clear that the Board's actions on those two occasions notified Derek of his violation of Section 8.21, what Section 8.21 governed , and the potential ramifications for continuing to violate it. Thus, because the Codes standards were specifically outlined, Kelly's vagueness claim fails.

*C. Substantive and Procedural Due Process Claims (Counts VI & VII)*

Kelly contends that the Board's decision to expel Derek from school violated his Fourteenth Amendment right to substantive and procedural due process. The

Fourteenth Amendment prohibits a state from depriving "any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV. In order to receive protection under the Fourteenth Amendment, a person must have a protected liberty or property interest. <u>Averhart v. Tutsie</u>, 618 F.2d 479, 480 (7th Cir. 1980). The "property interests protected by procedural due process extend well beyond actual ownership of real estate...or money," <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 571-72, 92 S.Ct. 2701 (1972), and include the right to education when state-sponsored education is made generally available. <u>Goss v. Lopez</u>, 419 U.S. 565, 574, 95 S.Ct. 729 (1975).

### *1. Substantive Due Process*

As for Kelly's substantive due process claim, she alleges that the Board decision to expel Derek constitutes both a specific act violation and a legislative violation of Derek's substantive due process rights. Substantive due process is implicated when the government exercises power without reasonable justification, and is most often described as an abuse of government power that "shocks the conscience." <u>Tun v. Whitticker</u>, 398 F.3d 899, 900 (7th Cir. 2005). "The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." <u>Miller v. Henman</u>, 804 F.2d 421, 427 (7th Cir. 1986). Substantive due process prevents the state from taking certain actions even if it provides procedural

safeguards, by protecting citizens against arbitrary or unreasonable government conduct. Tun, 398 F.3d at 902. However, the Supreme Court has emphasized, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708 (1998).

In order for Government action to be so egregious that it shocks the conscience, said conduct must be intended to injure in a way that cannot be justified by any governmental interest. County of Sacramento v. Lewis, 523 U.S. 833, 834, 118 S.Ct. 1708, 1711 (U.S. 1998). It is unquestionable in schools have a legitimate governmental interest in keeping gang violence from infiltrating its walls. In the instant case, Derek violated Section 8.21 on two occasions prior to the incident leading to the Boards decision to expel him. In total, the Board afforded Derek three opportunities to conform to Section 8.21's demands. Therefore, because Section 8.21 was is clearly in place to combat gang related activity, which is a legitimate concern for the Board, and Derek was clearly unwilling to conform to that policy, it cannot be said that the Board's decision was not shocking. Consequently, Kelly's specific act substantive due process argument fails.

### *2. Procedural Due Process (Count VII)*

As long as the student is given notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard, the expulsion procedures do not

offend due process requirements. Betts v. Bd. of Educ., 466 F.2d 629, 633 (7th Cir. 1972). Expulsion procedures must provide the student with a meaningful opportunity to be heard. Linwood v. Bd. of Educ., 463 F.2d 763, 769-70 (7th Cir. 1972). The proceedings need not, however, "take the form of a judicial or quasi-judicial trial." Id. at 770. Kelly submits essentially that the Board violated Derek's procedural due process rights by: 1) failing to adequately apprise Derek of the charges against him; 2) not giving Derek adequate time to investigate the matter; and 3) not holding the administrative hearing in front of an impartial officer.

It is apparent from Plaintiff's amended complaint that Derek was afforded all that was necessary of the Board to conform to procedural due process protection in an expulsion situation. Derek was given notice of the charges against him, the date and time of the expulsion hearing, and notified of his right to seek counsel. When the hearing was conducted, Derek and Kelly were granted the opportunity to testify, which they did. Further, as for Kelly's arguments concerning the impartiality of the hearing officer, she has provided us with absolutely no evidence supporting that accusation other than the mere fact that the hearing officer was an attorney at the law firm that represented McHenry. Because hearing officers are entitled to a presumption of honesty and integrity, Collura v. Board of Police Com'rs of Village of Itasca, 135 Ill.App.3d 827, 837, 482 N.E.2d 143, 148-149 (2nd Dist. 1985), and Kelly has failed

to show any real prejudice on the hearing officer's part, her accusations of impartiality are fruitless. Consequently, based upon the totality of the Amended Complaint Derek's procedural due process rights were not violated. Count VII is dismissed.

## *B. Count III - Plaintiff's Illinois State Law Spoliation Claim (Count VIII)*

Finally, Plaintiffs' last claim is that the Board is guilty of spoliation of evidence because the tape of the expulsion hearing was destroyed. Under Illinois law, spoliation of evidence falls under the general principles of negligence law. In order to adequately state a claim for such, Plaintiff must allege that the Board owed Derek a duty, breached that duty, and said breach proximately caused Derek to incur damages. Dardeen, 213 Ill.2d at 335-36, 821 N.E.2d 227, citing Boyd v. Travelers Insurance Co., 166 Ill.2d 188, 192-95, 652 N.E.2d 267 (1995).

A duty to take reasonable care to preserve evidence exists when (1) an agreement, statute, or other special circumstance created a duty to preserve evidence, or defendant voluntarily assumed such a duty by affirmative conduct; and (2) a reasonable person in defendant's position should have foreseen that the evidence was material to a potential civil action. Dardeen, 213 Ill.2d at 336, 821 N.E.2d 227, citing Boyd, 166 Ill.2d at 195, 652 N.E.2d 267. Defendants correctly point out that there is no statutory requirement that a Board appointed hearing officer keep or make a verbatim transcript of the hearing. See 105 ILCS 5/10-22.6 (stating, "when a hearing

officer is appointed by the board he shall report to the board a written summary of the evidence heard."). Plaintiff contends that the circumstances surrounding Derek's expulsion were special and that a reasonable Board would have foreseen that the tape would have been material to a potential civil action.

As to the element of causation, a "plaintiff is required to allege that a defendant's loss or destruction of the evidence caused the plaintiff to be unable to prove an otherwise valid, underlying cause of action." Boyd, 166 Ill.2d at 197, 652 N.E.2d 267. In this case, Kelly fails to submit how the tape recording of the expulsion hearing would have aided in asserting her alleged claims, which are primarily claims of constitutional deprivation based on Section 8.21 of the Code and the procedures the Board utilized in rendering its decision to expel Derek. The spoliation claim is legally insufficient.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is granted.

*/s/ Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

Dated:  September 22, 2006