UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHY KELLY, as mother and next friend for DEREK KELLY, a minor, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | 06 C 1512 |
| BOARD OF EDUCATION OF MCHENRY COMMUNITY HIGH SCHOOL DISTRICT 156 and individual members of the Board of Education, MARY KAY LOSCH, LORI NELSON, DEBORAH JACOBS, THOMAS WAGNER, DAVID BOGER, DIANE VIDA, and BOB GLASCOTT, JR., ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge

This matter comes before this Court on motion by Defendants Board of Education of McHenry Community High School District #156 and the individual named members of the Board of Education (collectively, the "Board") to dismiss all remaining counts of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

Derek Kelly ("Derek"), son of Plaintiff Kathy Kelly ("Kelly"), was expelled from McHenry Community High School ("McHenry") by the Board on January 18,

2006, for the remainder of the 2005-2006 school year. Derek was expelled after school officials caught him, for a third time in three years, drawing alleged gang signs on his school papers. According to the Board, Derek's drawings violated Section 8.21 of McHenry's student discipline code, which prohibits "gang activity" including the possession or use of gang symbols. The particulars of Derek's actions and the punishment meted out by the Board are discussed in detail in our prior decision in this case, *Kelly v. Board of Ed. of McHenry Comm. H.S. Dist. 156*, No. 06-C-1512, 2006 WL 2726231 (N.D. Ill. Sept. 22, 2006).

After Derek was expelled, Kelly filed suit against the Board, alleging that the Board's decision was arbitrary, capricious and unreasonable, that Section 8.21 of the McHenry discipline code violated Derek's rights under the First Amendment, and that the Board violated Derek's substantive and procedural due process rights. In our prior decision, we granted the Board's motion to dismiss all of Kelly's constitutional claims.

Defendants now move to dismiss the two remaining counts of Plaintiff's Amended Complaint - Count I, a petition for a writ of certiorari to review, reverse, or remand the Board's decision, and Count IV, a request for injunctive relief in the form of an order enjoining the Board from enforcing its decision to expel Derek.

## **LEGAL STANDARD**

Kelly has petitioned for a writ of certiorari from this court to review the Board's decision to expel Derek. In Illinois, the common law writ of certiorari "provides a

means whereby a party who has no avenue of appeal or direct review may obtain limited review over action by a court or other tribunal exercising quasi-judicial functions." *Reichert v. Court of Claims of State of Illinois*, 786 N.E.2d 174, 177 (Ill. 2003). The purpose of the issuance of a writ is to "bring the entire record in front of the court to have the court determine, from the record, whether the body acted in accordance with applicable law." *Id.* Issuance of a writ is discretionary, and given that the Board expelled Derek pursuant to its authority under the Illinois School Code, 105 ILCS 5/10-22.6, and the School Code does not provide for review of decisions of its boards of education, we will exercise our discretion to grant Kelly's petition for a writ. *See Stratton v. Wenona Comm. Unit Sch. Dist. No. 1*, 551 N.E.2d 640, 646 (Ill. 1990).

This question of administrative review comes before this Court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). However, because administrative review requires examination of the underlying record, the typical vehicle for review of administrative decisions is by cross-motion for summary judgment. *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307,* 237 F.3d 813, 816 (7th Cir. 2001). Generally, courts may not consider matters outside the pleadings in deciding a 12(b)(6) motion. *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 478-79 (7th Cir. 2002). However, as Defendants have attached the report of the Hearing Officer to their motion, and Kelly notes that we have also been provided copies of Derek's drawings and the McHenry administration's recommendation to the Board concerning Derek, we

believe we can evaluate the Board's decision based upon the materials currently in front of us.[1]  Therefore, we will treat the motion as a motion for summary judgment as provided in Fed. R. Civ. P. 56. *Tri-Glen v. Int'l Union of Operating Eng'rs, Local 150*, 433 F.3d 1024 (7th Cir. 2006).

The standard for administrative review at summary judgment differs from the typical standards employed in evaluating a summary judgment motion. *J.N. Moser Trucking, Inc. v. United States Dept. of Labor*, 306 F. Supp. 2d 774, 781 (N.D. Ill. 2004). In Illinois, the standards of review of a writ are essentially the same as those under the Administrative Review law. *Hanrahan v. Williams*, 673 N.E.2d 251, 253-54 (Ill. 1996). Courts will not interfere with the decisions of administrative bodies "unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is against the manifest weight of the evidence." *Murdy v. Edgar,* 469 N.E.2d 1085, 1088 (Ill. 1984). In reviewing administrative decisions, we cannot reweigh the evidence, make independent findings of fact, or substitute our reasoning for that of the agency. *Id.* This standard essentially comports with the traditional deference afforded to disciplinary decisions of school officials in Illinois. *See, e.g., Wilson v. Hinsdale*

---

[1] We have not been provided with two parts of the group exhibit accompanying the hearing officer's report - Derek's behavior log and attendance record. We find that the absence of these materials are not determinative because we have the hearing officer's report and summary of all the evidence presented and neither party has indicated that we need consider the behavior log or the attendance record in making our decision.

*Elementary Sch. Dist. 181*, 810 N.E.2d 637, 642-43 (Ill. App. 2004) (stating the rule that "where no deprivation of a constitutional right is alleged, a decision to suspend or expel a student will be overturned only if it is arbitrary, unreasonable, capricious, or oppressive.")[2]

With these legal principles in mind, we now turn to a consideration of the issues raised in the Board's motion.

## **DISCUSSION**

Defendants seek dismissal of all remaining counts of Kelly's amended complaint, arguing both that the Board's decision to expel Derek was not arbitrary, capricious, or unreasonable such that this Court should overturn the decision, and that as Derek is now allowed to re-enroll at McHenry Community High School, Kelly's request for injunctive relief is moot.

As the parties do not dispute that Derek has already served his term of expulsion, this Court would ordinarily be inclined to dismiss both remaining counts of Kelly's amended complaint as moot. *See Porco v. Trustees of Indiana University,* 453 F.3d

---

[2] Kelly maintains that the question of whether or not Derek was afforded due process is a legal question, rendering the decision of the Board a "mixed" question of fact and law to be evaluated under a "clearly erroneous" standard. Kelly argues that this Court's prior ruling, in which we held that Derek was afforded due process, was in error and should be reconsidered. In addition to having failed to file a motion for relief from judgment or order as required by Fed. R. Civ. P. 60, Kelly offers no new factual or legal argument in support of her contention that the Court ruled incorrectly and should reconsider its ruling. We see no reason to alter our prior decision.

390, 394 (7th Cir. 2006). The existence of this expulsion on his record has a practical effect upon Derek's legal rights, however, even after term of the expulsion has expired. *See Crane by Crane v. Indiana High School Athletic Ass'n,* 975 F.2d 1315, 1318 (7th Cir. 1992). Derek is still a student at McHenry, and his expulsion could affect his academic credits and ability to graduate. Furthermore, leaving an expulsion on his record, however temporary, could have a cumulative effect if he was later subject to discipline at McHenry, or if he were to have his records subpoenaed by juvenile authorities as permitted by 105 ILCS 10/6(1)(6.5). Accordingly, the question of whether or not Derek was properly expelled is not moot, and an examination of the Board's decision is necessary in order to determine whether Derek's expulsion should stand.

I.   Was the Board's Decision Against the Manifest Weight of the Evidence?

We examine first whether or not the Board's decision to expel Derek for the remainder of the 2005-2006 school year was against the manifest weight of the evidence. *See Murdy*, 469 N.E. 2d at 1088. The Board concluded that Derek had violated Section 8.21 by drawing gang symbols on his school papers on three occasions - in November 2003, February 2004, and January 2006. Section 8.21 of McHenry's student code lists "gang activity" as a type of gross disobedience or misconduct. Under Section 8.21, gang activity "includes but is not limited to, any act in furtherance of the gang and possession or use of gang symbols, such as drawings, hand signs, and attire."

McHenry's discipline policy provides for a three-day out-of-school suspension upon the first offense and for a ten-day out-of-school suspension, pending an expulsion hearing, upon the second offense. The Illinois School Code, 105 ILCS 5/10-22.6, invests local boards of education with the authority to expel students for up to two years for instances of gross disobedience or misconduct.

Evidence presented at the hearing demonstrated that Derek had been disciplined for drawing purported gang symbols on his papers on three occasions. In November 2003, Derek drew an inverted "t" on his homework assignment. Mr. Pryzbylzski, the assistant principal at McHenry, chose not to institute the first step of the gang discipline policy with Derek, because he was a new student. Instead, he discussed the McHenry gang policy with Derek, and also called Derek's mother. In February 2004, Derek was suspended pursuant to the gang policy for drawing a crown on another homework assignment, and his mother came in for a parent conference concerning the suspension. In January 2006, Derek was caught passing his agenda, which was decorated with numerous drawings of three- and five-point crowns, to another student during his in-school suspension. Derek was suspended, pursuant to the gang policy, for ten days, and recommended for expulsion. Evidence that at least two of Derek's drawings, the inverted "t" and the three-and five-point crowns, were gang symbols was provided by police officer Jill Harris, who is the designated "resource officer" for McHenry. Officer Harris further testified that gangs were present at McHenry, and that even the possession

and use of gang symbols can be dangerous, because those symbols are likely to incite other gang members to violence. Derek provided no explanation for his drawings, other than that he wasn't really thinking about what he was drawing. Kelly testified that her son was not in a gang.

Kelly contends that the Board's decision to expel Derek upon a second violation of Section 8.21 was not supported by the evidence. Kelly points out that no specific testimony supports the school's claim that the crown drawn on Derek's February 2004 art work was a gang symbol. Instead, the testimony that Derek's drawings were gang symbols referenced only the inverted pitchfork, drawn in November 2003, and the crowns in Derek's agenda, drawn in January 2006. Other than the contention of McHenry administrators, the record is silent as to the status of the February 2004 drawing of a crown. Thus, Kelly argues, Derek never committed a "step one" offense, and the January 2006 incident, in which Derek drew crowns on his agenda, should be properly considered the first, rather than his second, offense in violation of Section 8.21.

Even if we assume that McHenry officials erred in suspending Derek in February 2004, the record is clear that Derek committed two violations of Section 8.21. Prior to the January 2006 drawing, Derek was twice warned that his conduct violated Section 8.21, and his mother was also informed that his conduct was inappropriate. We may affirm an agency's decision on any grounds contained in the record. *Abrahamson v. Illinois Dept. of Professional Regulation*, 606 N.E.2d 1111, 1117 (Ill. 1992). The

Board's decision to expel Derek after the commission of two documented violations of Section 8.21 is not contrary to the manifest weight of the evidence nor is it in conflict with the Board's stated discipline policy.

II. Did the Board Abuse its Discretion or Act Arbitrarily and Capriciously?

Second, we examine whether or not the Board abused its discretion or otherwise acted arbitrarily and capriciously in ordering Derek expelled for the remainder of the 2005-2006 school year. In reviewing disciplinary actions of school officials for abuse of discretion, courts consider five factors: 1) the egregiousness of the student's conduct; 2) the history or record of the student's past conduct; 3) the likelihood that such conduct will affect the delivery of educational services to other children; 4) the severity of the punishment; and 5) the interest of the child. *Robinson v. Oak Park and River Forest High School*, 571 N.E.2d 931, 935 (Ill. App. 1991). Kelly contends that Derek's actions were not so egregious or dangerous as to justify the serious sanction of expulsion. The Board, on the other hand, argues that the testimony of McHenry's police resource officer concerning the danger posed by gang signs and the presence of gangs at McHenry supports its insistence on strict enforcement of Section 8.21 in order to protect all students who attend McHenry. Furthermore, the Board argues that Derek's repeated violations of the ban, despite clear warnings, made expulsion a proper remedy.

Kelly's arguments concerning the seriousness of Derek's conduct are essentially restatements of arguments rejected in our earlier opinion. First, Kelly argues that

because there is no evidence that Derek communicated the symbols in question to others, his acts did not violate the gang policy and did not negatively affect the education of other students. Section 8.21 does not require that the symbols be viewed by other students - instead, the section clearly prohibits both possession <u>or</u> use of gang symbols. Derek's conduct violated Section 8.21, a rule which we have already upheld as valid given the Board's legitimate concern in preventing gang activity in its schools. Kelly appears to be arguing for a rule that would prohibit "possession and use" of gang symbols, resulting in punishment only if violence resulted or if other students saw the symbols. Such a rule would be both pointless as a deterrent as well as nearly impossible to enforce. Second, Kelly argues that Derek did not repeatedly violate the gang policy because each of his drawings was of a different type of gang symbol and occurred over a span of three years. This argument is equally contrary to the text and purpose of Section 8.21. Section 8.21 does not require that the drawings be of the same type of gang symbol or that violations be committed within a particular span of time, and Kelly has provided no convincing evidence or argument to justify imposing such a requirement from the bench. Third, Kelly also argues that Derek, a student who was not in a gang, did not know what a gang symbol was and therefore could not knowingly have been drawing gang symbols. Essentially, Kelly is attempting to re-argue the issue of whether or not Section 8.21 was void for vagueness, as well as whether Derek was adequately informed of the nature of his offenses. We settled both of these issues in our

prior opinion, holding that Section 8.21 was not impermissibly vague, and that Derek was sufficiently informed of the nature of the prohibited conduct. Kelly's final argument is that expulsion for half of the school year in response to three drawings was excessive, because the danger Derek's drawings posed to the student body was not outweighed by Derek's need for education, especially considering his status as a low-achieving student and a reclassified freshman.

While we are sympathetic to Kelly's concerns that her son, a poor student, needs to be in school, we do not believe that the Board acted arbitrarily and capriciously or abused its discretion when it determined that the needs of the school, in preventing and controlling gang activity, outweighed Derek's individual needs. We have already held that there is nothing constitutionally infirm about the policy itself. The evidence in front of the Board contradicts Kelly's assertions that drawing or possessing gang signs is not dangerous, as well as her assertions that Derek, who was warned twice about his propensity for drawing gang or gang-related symbols, did not willfully violate section 8.21. The Board's decision was supported by the evidence, was consistent with its published and explained policy, and was at the low end of the suspension it was permitted by law to impose. On this record, we cannot say that the punishment imposed was so excessive that the Board's decision was an abuse of discretion or arbitrary and capricious. Accordingly, we decline to reverse the Board's decision.

The Board has also moved to dismiss Count IV of Kelly's Amended Complaint, in which Kelly requested an injunction against enforcement of the Board's order of expulsion. As we have determined that the Board did not act arbitrarily or capriciously in expelling Derek, Count IV is dismissed as moot.

## CONCLUSION

For the foregoing reasons, judgment is granted to Defendants on Count I of Plaintiff's Amended Complaint, and Count IV of Plaintiff's Complaint is dismissed as moot.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: January 10, 2007